**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (805) 994-0177
Facsimile: (805) 994-0197

*Attorneys for Plaintiff*,
Hyo Shim

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HYO SHIM,**<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>**MERCEDES-BENZ FINANCIAL SERVICES USA LLC; AND, EXPERIAN INFORMATION SERVICES INC.**<br><br>　　　　　Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>　I.　**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.; AND,**<br><br>　II.　**CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

| **CASE NO.:** | *Shim v. Mercedes-Benz Financial Services USA LLC, et al.* |
|---|---|
| | **COMPLAINT** |

# INTRODUCTION

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature found that the banking system is dependent upon fair and accurate credit reporting; and that, inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. The California Consumer Credit Reporting Agencies Act was enacted to ensure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.[1]

---

[1] Cal Civ. Code § 1785.1

3. HYO SHIM ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants MERCEDES-BENZ FINANCIAL SERVICES USA LLC N.A. ("MERCEDES-BENZ" and/or "FURNISHER") and EXPERIAN INFORMATION SERVICES INC. ("Experian").

4. Each Defendant independently reported erroneous negative and derogatory information on Plaintiff's credit report following Plaintiff's Chapter 7 filing.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

8. Any violations by each Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims.

11. This action arises out of Defendants' respective violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"); and, (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCCRAA").

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Orange, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person who resides in Buena Park, California.

14. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(c).

15. Plaintiff is informed and believes, and thereon alleges, that Defendants are, and at all times mentioned herein were, businesses with locations throughout the State of California.

16. Mercedes-Benz is a company located in the State of Michigan.

17. Mercedes-Benz is a "person" as that term is defined by Cal. Civ. Code § 1785.3(j); and, a "furnisher" as that term is utilized in the FCRA.

18. Experian is a company located in the State of California.

19. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

20. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's creditworthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

21. Each Defendant is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

# FACTUAL ALLEGATIONS
## PLAINTIFF'S BANKRUPTCY

22. At all times relevant, Plaintiff is an individual residing within the State of California.

23. Plaintiff filed for a no-asset Chapter 7 Bankruptcy on July 24, 2020 in the United States Bankruptcy Court for the Central District of California.

24. Plaintiff's case was assigned Case Number 8:20-bk-12078-ES (the "Bankruptcy").

25. Multiple consumer obligations ("Debt") to Mercedes-Benz were scheduled and included in the Bankruptcy.

26. Mercedes-Benz and the Credit Bureaus automatically received notice of the Bankruptcy filing through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

27. Defendants did not file any successful proceedings to declare their Debt "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

28. Defendants also did not request or receive relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while Plaintiff's Bankruptcy was pending to pursue Plaintiff for any of the underlying Debts in their pre-bankruptcy form.

29. Accordingly, all Debts identified herein were not discharged through the Bankruptcy.

30. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection, the automatic stay, and the Discharge Order (collectively the

"Bankruptcy Orders").

31. Defendants either reported or caused to be reported inaccurate information after the Bankruptcy was filed *and* discharged, in the form of reporting the *current* account (pay) status of the Debt as being "charged off," or some other continuing financial obligation, as opposed to "Discharged in Bankruptcy" (or the equivalent).

32. The derogatory information reported by Defendants after the Bankruptcy was discharged indicates to potential creditors that the Debt was somehow not discharged in the Bankruptcy and Plaintiff was actively delinquent in respect to each Debt, which is inaccurate and materially misleading reporting.

33. Defendants' reporting of post-Bankruptcy derogatory information was also inaccurate because a default on an account included in a bankruptcy can occur no later than the bankruptcy filing date, at which point the accounts included in the Bankruptcy become no longer collectable as an effect of the automatic stay.

34. Thus, by reporting post-Bankruptcy derogatory information, Defendants effectively reported: (1) Plaintiff was being financially irresponsible by failing to pay the debt *after* the Bankruptcy was filed; and (2) that Plaintiff's Debt was more recently subject to collection than it really was, which is inaccurate and misleading under the FCRA and CCCRAA.

35. Defendants' attempts to collect upon the Debt by reporting post-Bankruptcy derogatory information on Plaintiff's Credit Reports, which is a collection activity, was therefore inaccurate and materially misleading.

36. Defendants' reporting of post-Bankruptcy derogatory information was also inaccurate and materially misleading because Defendants continued reporting information based on Defendants' pre-bankruptcy contract terms with Plaintiff, which were no longer enforceable upon the filing of the Bankruptcy, thereby rendering the disputed information inaccurate and materially misleading.

37. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of this date.

38. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b).

39. When a debtor such as Plaintiff files a Chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose *before the date of the order for relief*." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

40. Thus, in relation to the FCRA and CCCRAA, the discharge order rendered the information reported by Defendants following the bankruptcy discharge inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay any debts as of the date of filing the Bankruptcy petition.

41. Moreover, the derogatory, delinquent information furnished by Defendants following the Bankruptcy Discharge was inaccurate and misleading because end users, including potential creditors, may interpret the reported information to mean that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the Debt with Defendants notwithstanding the discharge.

42. However, Plaintiff did not incur new debt during the pendency of the Bankruptcy or reaffirm the Debt in the Bankruptcy.

43. Further, the Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.

44. Upon information and belief, Plaintiff alleges that Defendants voluntarily chose to subscribe to the Metro 2 format in their practice of report credit to credit reporting agencies.

45. Reasonable entities, including potential creditors, would have thus expected Defendants to report in compliance with the Metro 2 format.

46. Upon information and belief, Defendants have adopted the CDIA's Metro 2 CRRG as its standard instruction book in respect to credit reporting, which instructs furnishers to update the CII indicator status of accounts discharged in Chapter 7 Bankruptcies with an "E" notation, i.e. "Discharged in Bankruptcy."

47. Potential creditors familiar with Metro 2 standard credit reporting instructions would be misled by seeing Defendants reporting a continuing financial obligation or a "Charged Off" *current* (pay) status in respect to the Debt, as opposed to "Discharged in Bankruptcy," to believe that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the debt notwithstanding the discharge, because Mercedes-Benz's reporting deviated from Metro 2 reporting instructions in this respect.

48. However, Plaintiff did not incur new debt with Defendants during the Bankruptcy proceeding or reaffirm the Debt in the Bankruptcy.

49. Accordingly, by reporting this post-Bankruptcy derogatory information, Defendants did not comply with the Metro 2 format.

50. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores.

51. Moreover, the FCRA imposes no requirement or mandate that a furnisher provide any information to a CRA. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a CRA is completely voluntary.

52. Pursuant to the Voluntary Undertakings Doctrine, found in the Second Restatement of Torts (Section 323 and 324), and as adopted by California, an undertaking once begun, which induces reliance of others for their own safety, cannot be discontinued without reasonable care to avoid increasing the risk.

53. The voluntary nature of credit reporting induces the affirmative duty by furnishers, pursuant to the CCCRAA and FCRA, to report accurately to the CRAs.

54. Credit reporting is done for the protection of other creditors extending offers of credit and for debtors being accurately portrayed to potential creditors.

55. Accordingly, once Defendants made the voluntary decision to report Plaintiff's accounts, Defendants were required to report accurately to the CRAs.

56. Plaintiff alleges that Defendants did not comply with the Metro 2 reporting standards in respect to Plaintiff's account and reported inaccurately by failing to comport their reporting practices with the implication of Plaintiff's filing of the Bankruptcy and ultimate discharge.

57. Accordingly, Defendants' non-compliance with the Metro 2 reporting standards constitutes an inaccurate or misleading statement under the FCRA and CCCRAA, because a furnisher that fails to comply with the uniform and objective Metro 2 reporting standards compromises the credit reporting system.

58. Deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the furnisher reported in accordance with the recognized industry standard.

59. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and Defendants' chosen method of reporting—constitutes an inaccurate or misleading statement, because those making credit decisions, who would expect that furnishers like Defendants would adhere to the Metro 2 format, would view a *current* account status of "Charged Off" or an ongoing balance after a bankruptcy is discharged more negatively than "Discharged in Bankruptcy."

60. Defendants' failure to adhere to the Metro 2 format would prompt those making credit decisions to draw a more negative inference from PCU's reporting of a *current* (pay) status of "Charged Off" than if Defendants accurately reported "Discharged through Bankruptcy" because a "Charged Off" account status indicates that a debt is still legally collectable and a legally owed obligation.

61. Plaintiff subsequently learned that Defendants reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous and negative credit information in Plaintiff's credit files and damaging Plaintiff's creditworthiness.

62. As a direct and proximate result of Defendants' willful and untrue communications, Plaintiff has suffered actual damages including, but not limited to, reviewing credit reports, sending dispute letters, attorney's fees, and such further expenses in an amount to be determined at trial.

63. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff incurred pain and suffering, was impeded in seeking necessary products and services from vendors, suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character.

64. Plaintiff has also refrained from obtaining further credit knowing that Defendants' inaccurate tradelines are being reported.

65. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

66. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

67. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

68. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

69. Namely, Plaintiff has been precluded from the fresh start that Plaintiff so desperately desires.

## MERCEDES-BENZ

70. In a credit report dated January 20, 2022, Mercedes-Benz reported that one of Plaintiff's accounts was open.

71. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that the Account was *discharged* in Plaintiff's Bankruptcy or even subject to bankruptcy.

72. In the same credit report, Mercedes-Benz reported that the status on Plaintiff's other account was "Petition for Chapter 7 Bankruptcy."

73. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that the Account was *discharged* in Plaintiff's Bankruptcy.

74. Mercedes-Benz's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

75. As noted above, Mercedes-Benz received notice of Plaintiff's bankruptcy filing.
76. Rather than using the bankruptcy information sent specifically to Mercedes-Benz that Mercedes-Benz knew or should have known existed, Mercedes-Benz chose to continue reporting inaccurately on Plaintiff's credit report.
77. Rather than using the publicly available Bankruptcy information that Mercedes-Benz knew or should have known existed, Mercedes-Benz chose to continue reporting inaccurately on Plaintiff's credit report.
78. Mercedes-Benz's inaccurate and negative reporting of the Accounts in light of its knowledge of the Bankruptcy discharge was willful.
79. Through this conduct, Mercedes-Benz has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Experian that Mercedes-Benz knew or should have known was inaccurate.

## THE CREDIT BUREAUS

80. Each of the Credit Bureaus also received notice of Plaintiff's initial bankruptcy filing since the Credit Bureaus were listed on Plaintiff's Schedule.
81. To report these continuing financial obligations after bankruptcy filing is patently incorrect, misleading, and fails to comply with the Metro 2 Guidelines.
82. Each of the Credit Bureaus, and specifically to this case, Experian, have been involved in significant litigation, including multiple class actions, regarding the reporting of accounts during the pendency of a bankruptcy.
83. Through this experience and associated Court Orders, the Credit Bureaus, and specifically to this case, Experian is aware of a bankruptcy filing's legal effect.
84. Accordingly, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) as a result.

# FIRST CAUSE OF ACTION

# THE FAIR CREDIT REPORTING ACT

# 15 U.S.C. §§ 1681-1692X (FCRA)

# [AGAINST ALL DEFENDANTS]

85. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

87. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

88. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow for all other class members, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

# SECOND CAUSE OF ACTION

# VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

# CAL. CIV. CODE § 1785.1, ET SEQ.

# [AGAINST MERCEDES-BENZ]

89. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

90. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

91. In the regular course of its business operations, Furnishers routinely furnish information to credit reporting agencies pertaining to transactions between the Furnishers and their consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

92. Because each Furnisher is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), each Furnisher is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

93. Since the Furnishers each received notice of Plaintiff's bankruptcy filing, these entities knew or should have known that reporting an ongoing financial obligation was inaccurate.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Furnisher;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Furnisher;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Furnisher;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Furnisher; and,
- Any and all other relief the Court deems just and proper.

### TRIAL BY JURY

94. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 11, 2022                               Respectfully submitted,

**LOKER LAW, APC**

By:   /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF

CASE NO.:                         14 OF 14     *Shim v. Mercedes-Benz Financial Services, et al.*
                                  **COMPLAINT**